No. 22-13124

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
*Appellee,*
**v.**

**RODOLFO MAISONET,**
*Appellant.*

—————————

On Appeal from the United States District Court
for the Northern District of Florida, Tallahassee Division

—————————

*REDACTED*

*INITIAL BRIEF OF THE APPELLANT*

—————————

RANDOLPH P. MURRELL
Federal Public Defender

MEGAN SAILLANT
Assistant Federal Public Defender
Florida Bar No. 0042092
101 SE 2nd Place, Suite 112
Gainesville, Florida 32601
Telephone: (352) 373-5823
Email: Megan_Saillant@fd.org
Attorney for Appellant

*United States v. Maisonet*
*Case No. 22-13124*

<u>CERTIFICATE OF INTERESTED PERSONS</u>

As required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the following persons have an interest in the outcome of this case:

Cobb, Lauren, Assistant Federal Public Defender

Coody, Jason, Acting United States Attorney

Davies, Robert, Assistant United States Attorney

DeBelder, Joseph F., Federal Public Defender

Fitzpatrick, Martin A., United States Magistrate Judge

Maisonet, Rodolfo, Defendant/Appellant

Mountin, Eric, Assistant United States Attorney

Murrell, Randolph, Federal Public Defender

Saillant, Megan Jean, Assistant Federal Public Defender

Stampelos, Charles A., United States Magistrate Judge

Vallejo, Elizabeth, Assistant Federal Public Defender

Walker, Mark E., Chief United States District Judge

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Maisonet believes this case can be resolved by applying this Court's binding precedent in *United States v. Brownlee,* 204 F.3d 1302 (11th Cir. 2000). Therefore, he does not believe oral argument is necessary.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................. *C1 of 1*

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUE..................................................................2

STATEMENT OF THE CASE .................................................................3

(i) Course of Proceedings and Disposition in the Court Below ........................................................................................3

(ii) Statement of the Facts.....................................................3

a. *Mr. Maisonet promptly admitted to receiving large packages of cocaine from Puerto Rico for sale, which he then resold* ...........................................................................4

b. *The pre-sentence investigation report did not apply the safety valve provision* ............................................................8

c. *Mr. Maisonet filed a sentencing memorandum which included numerous letters of support from his community* ...............................................................................9

d. *The district court imposed a guidelines sentence without the safety valve provision* .................................................... 12

(iii) Standard of Review ........................................................... 16

SUMMARY OF THE ARGUMENT ...................................................... 17

## <u>TABLE OF CONTENTS</u> *-cont'd*

ARGUMENT .......... ................................................................. 18

    Mr. Maisonet was entitled to be sentenced pursuant to USSG § 5C1.2, the safety-valve provision ................................. 18

CONCLUSION ......................................................................... 22

CERTIFICATE OF COMPLIANCE ....................................... 23

CERTIFICATE OF SERVICE ................................................ 23

# TABLE OF AUTHORITIES

**Cases**

\* *United States v. Brownlee,*
204 F.3d 1302 (11th Cir. 2000) ................................................... *passim*

*United States v. Cruz,*
106 F.3d 1553 (11th Cir. 1997) ........................................................ 19

*United States v. Milkintas,*
470 F.3d 1339 (11th Cir. 2006) ....................................................... 16

*United States v. Yate,*
176 F.3d 1309 (11th Cir. 1999) ........................................................ 19

**Statutes**

18 U.S.C. § 3231 ................................................................................... 1

18 U.S.C. § 3553(f) ............................................................................. 18

18 U.S.C. § 3742 ................................................................................... 1

28 U.S.C. § 1291 ................................................................................... 1

**Rules**

Fed. R. App. P. 32(a)(5) ...................................................................... 23

Fed. R. App. P. 32(a)(6) ...................................................................... 23

Fed. R. App. P. 32(a)(7)(B) ................................................................. 23

Fed. R. App. P. 32(f) ........................................................................... 23

**Guidelines**

\* USSG § 5C1.2 ........................................................................... *passim*

USSG § 5K1.1 ...................................................................................... 6

# STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Florida had jurisdiction over the federal criminal charges against Mr. Maisonet, pursuant to 18 U.S.C. § 3231. The sentencing hearing was held on August 25, 2022,[1] and a written judgment and sentence was submitted on August 29, 2022.[2] (Footnotes in this brief refer only to supporting documentation and corresponding page numbers). Mr. Maisonet filed a timely notice of appeal on August 31, 2022.[3] This Court has jurisdiction over his appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

---

[1] ECF 72.
[2] ECF 58.
[3] ECF 60.

## STATEMENT OF THE ISSUE

Mr. Maisonet was entitled to be sentenced pursuant to USSG § 5C1.2, the safety-valve provision.

## STATEMENT OF THE CASE

**(i)    Course of Proceedings and Disposition in the Court Below**

Mr. Maisonet pled guilty to one count each of: conspiracy to possess with intent to distribute cocaine (Count 1) and possession with intent to distribute cocaine (Count 2). Count 1 carried a statutory mandatory minimum of ten years' imprisonment Mr. Maisonet was sentenced to 120 months' imprisonment, on both counts, to run concurrently. Mr. Maisonet is currently incarcerated.

Mr. Maisonet is currently incarcerated.

**(ii) Statement of Facts**

Mr. Maisonet is a self-employed barber who supports his wife and three children.[4] He and his wife, Janet de Jesus, have been together for 23 years.[5] When they first met, she had a four-year-old son.[6] From the very beginning, Mr. Maisonet treated his stepson as his own.[7] Together they had two more children and live in a home renovated by Mr. Maisonet. Mrs. de Jesus was a nurse for 40 years before she was forced

---

[4] ECF 44 at ¶ 50.
[5] *Id.*
[6] *Id.*
[7] *Id.*

to retire because of a medical condition.[8] Since then, Mr. Maisonet has supported his family on his own.[9]

In November of 2014, Mr. Maisonet was hospitalized for a staph infection.[10] He was required to stay in the hospital for 16 days after undergoing major surgery.[11] It was during this time he was administered pain killers and developed his opioid addiction.[12] According to his family and friends, this addiction was what lead him down the wrong path to start dealing drugs.[13]

   a. *Mr. Maisonet promptly admitted to receiving large packages of cocaine from Puerto Rico for sale, which he then resold.*

On August 11, 2020, U.S. Postal Inspection Service officers intercepted a package mailed from Puerto Rico to an address in Tallahassee, which they believed contained a controlled substance.[14] After a trained K9 alerted on the package, a federal search warrant was obtained.[15] Inside the package officers discovered 497.6 grams of

---

[8] ECF 72 at 37.
[9] ECF 74 at 1.
[10] ECF 72 at 38.
[11] *Id.*
[12] *Id. See also,* ECF 44 at ¶ 54.
[13] ECF 74; ECF 54.
[14] ECF 26 at 1.
[15] *Id.* 1-2.

powder cocaine.[16] Three days later, Mr. Maisonet, using his nephew as a translator, called the Tallahassee post office to inquire about a package he was expecting but had not yet received.[17] After being told the package had been found, Mr. Maisonet and his nephew went to the post office to retrieve it.[18] When they arrived they were met by officers, one of whom spoke Spanish and advised them of their *Miranda* rights.[19] Mr. Maisonet promptly waived his rights, admitted the package was his, and explained he expected it to contain half a kilogram of cocaine.[20]

Mr. Maisonet admitted he had received ten to twelve packages "semi-weekly since November 2019, which generally contained between ½ up to 1½ kilograms of cocaine."[21] Mr. Maisonet would then send proceeds from the sale of the drugs back to Puerto Rico or give the money to someone local who was associated with the source of supply in Puerto Rico.[22] Mr. Maisonet was subsequently charged with conspiracy

---

[16] *Id.*
[17] *Id.* at 2.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 2-3.
[21] *Id.* at 3.
[22] *Id.*

to possess with intent to distribute cocaine and possession with intent to distribute cocaine.[23]

Mr. Maisonet signed a plea agreement on October 22, 2021.[24] ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ In turn, the government agreed they would advise the court of Mr. Maisonet's cooperation and possibly file a substantial assistance motion pursuant to USSG § 5K1.1.[26] Mr. Maisonet remained on pretrial release while he awaited sentencing.[27]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[23] ECF 1.
[24] ECF 27.
[25] ECF 29.
[26] *Id.* at
[27] ECF 42 at 4.
[28] *Id.* at 3.

██████████████████████████████████████

███████████████████████████████ [30]

In November of 2021, in a separate investigation conducted by postal inspectors, a package containing half a kilogram of cocaine, mailed from Puerto Rico to Wakulla County, Florida, was intercepted.[31] The same address was known to have received multiple drug packages prior to the intercepted package.[32] Further investigation revealed Mr. Maisonet was the intended recipient of the November 2021 package.[33] He was arrested by the Wakulla County Sheriff's Office on November 30, 2021.[34] (In the PSR, Probation cites December 1, 2021 as Mr. Maisonet's arrest date for this offense.[35] Although it is unclear which date is correct, the discrepancy is immaterial). Mr. Maisonet was not charged with any crime in relation to the Wakulla County investigation.[36] After his arrest he continued on pretrial release for his

---

[29] *Id.* at 3.
[30] *Id.*
[31] ECF 42 at 4-6.
[32] *Id.*
[33] *Id.* at 5.
[34] *Id.*
[35] ECF 44 at ¶ 41.
[36] ECF 42 at 5.

federal charge.[37] Mr. Maisonet offered to provide another proffer interview with the federal agents, but the government declined to interview Mr. Maisonet.[38]

### b. *The pre-sentence investigation report did not apply the safety valve provision.*

Prior to sentencing the United States Probation Office prepared a pre-sentence investigation report (PSR).[39] Mr. Maisonet was held responsible for 5.5 kg of cocaine, giving him a base offense level of 30.[40] He did not receive any deduction for acceptance of responsibility,[41] and therefore his total offense level was 30.[42] Mr. Maisonet scored zero criminal history points, placing him in category I.[43] That, combined with his total offense level, would have yielded an advisory guidelines range of 97 to 121 months' imprisonment.[44] However, because there was a statutory mandatory minimum of ten years, his guidelines range was 120 to 121 months imprisonment.[45]

---

[37] ECF 35.
[38] *Id.*
[39] ECF 44.
[40] *Id.* at ¶ 24.
[41] *Id.* at ¶ 31.
[42] *Id* at ¶ 32.
[43] *Id.* at ¶¶ 38-39.
[44] *Id.* at 65.
[45] *Id.*

Mr. Maisonet filed objections to the PSR calculations.[46] In addition to objections of various factual inconsistencies, he asserted he was in fact eligible to be sentenced in accordance with USSG § 5C1.2.[47] The government also filed objections to the PSR, in which it argued Mr. Maisonet was not entitled to safety-valve relief.[48] The government also alleged the base offense level should be 30, based on a total drug weight of over 5 kilograms of cocaine.[49]

### c. Mr. Maisonet filed a sentencing memorandum which included numerous letters of support from his community.

Mr. Maisonet, through counsel, filed a sentencing memorandum over two weeks before the sentencing hearing.[50] In it, he cited to a wealth of mitigating information.[51] Mr. Maisonet began by advising the court regarding his eligibility for safety valve.[52] He scored zero criminal history points, did not use violence or threats to carry out his offense, did not possess a firearm, no one died because of his actions, and he was

---

[46] ECF 41.
[47] *Id.* at 2.
[48] ECF 37.
[49] *Id.*
[50] ECF 54.
[51] ECF 54.
[52] *Id.*

not an organizer or leader.[53] Finally, ██████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████.[54]

Attached to the sentencing memorandum was a sworn statement provided to the government which divulged ████████████████████
████████████████████████████████████████████████.[55] Twice while he was on pre-trial release, in October and December of 2021, Mr. Maisonet arranged for delivery of packages containing cocaine.[56] (Again, Mr. Maisonet cites to the date of delivery as December 1, rather than November 30, but that discrepancy is immaterial). The packages came from the same source of supply in Puerto Rico and were both delivered to the address in Wakulla County.[57] He was not involved in any other shipments during that time.[58] Mr. Maisonet arranged these two exchanges because he was

---

[53] *Id.* at 2.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*

afraid of going to prison and leaving his wife and family without any financial stability.[59]

The memorandum included a report from DISC Village, where Mr. Maisonet sought mental health services.[60] His evaluator described him as "punctual and engaging in individual sessions."[61] The report also noted Mr. Maisonet's diagnosis with Hepatitis C, anxiety, opioid dependence, and depression.[62]

Also attached to the memo were letters of support from Mr. Maisonet's family and friends. The letters described him as kind, hardworking, respectful, and a wonderful father.[63] His family members also expressed concern for his liver condition which they feared would not be properly treated in prison and could lead to death.[64] His brother died of a similar condition while incarcerated.[65]

The government filed its own sentencing memo.[66] It outlined Mr. Maisonet's initial offense, his cooperation, and the offenses he

---

[59] *Id.*
[60] ECF 54 at 42-69.
[61] *Id.* at 42.
[62] *Id.* at 43.
[63] ECF 54 at 25-36; ECF 74 3-8.
[64] ECF 54 at 26; ECF 74 at 4, 7.
[65] ECF 74 at 4.
[66] ECF 42.

committed while on pre-trial release.[67] There was some implication that

Mr. Maisonet had been involved in additional drug trafficking in

Wakulla County.[68] Mr. Maisonet had not yet been charged with any of

these alleged offenses.[69] The government urged the court to impose an

"above-guidelines sentence."[70]

> ### d. The district court imposed a guidelines sentence without the safety valve provision.

At the start of sentencing, the court correctly framed the issue of

the safety valve as " ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ [72] The government,

however, declined to do so.[73] All parties agreed that the offenses Mr.

Maisonet committed after he was arrested were part of the same

common plan or scheme as his initial offenses.[74]

---

[67] *Id.*
[68] *Id.* at 4-6.
[69] *Id.*
[70] *Id.* at 9.
[71] ECF 72 at 8.
[72] *Id.* at 9.
[73] *Id.* at 9.
[74] *Id.* at 12, 13, 16.

Again, the court identified the issue as "if you acknowledge those facts prior to sentencing, is that enough to satisfy sub-five of the safety valve provision?"[75] The court made the following findings regarding the applicability of the safety valve provision:

> A, the government doesn't have to give you a second chance to come clean.
> And, B, once you are caught, acknowledging under oath you were caught doesn't fix the problem of the original material omission.



[76]

The court stated that a material or knowing omission by a defendant renders him ineligible for safety valve relief.[77] That Mr. Maisonet provided a sworn statement regarding the Wakulla County offenses after the fact did not "retroactively fix [his] mistake …"[78] The court correctly noted "[s]afety valve says you need to come clean with the government prior to sentencing."[79] The government agreed, noting "you have to be honest. And when you are not honest, when you leave

[75] *Id.* at 16-17.
[76] *Id.* at 21.
[77] *Id.* at 20.
[78] *Id.* at 22.
[79] *Id.*

out material facts[,]" you are not eligible for safety valve relief.[80] The government implied Mr. Maisonet had been involved with trafficking to the Wakulla County address many more times that he admitted to in his proffers or the sworn statement.[81] Although "not determinative" of his ruling, the court later agreed that Mr. Maisonet had not provided "a full historical rundown about everything that happened at that address."[82]

Defense counsel reminded the court that although Mr. Maisonet had committed the offenses, he had been cooperative from the very beginning.[83] ███████████████████████████████████████████████████████████████████████████████████████████████████████.[84] ███████████████████████████████████████████████████████████.[85] Fear of this type of danger, and leaving his family without financial security, lead Mr. Maisonet to make some bad

---

[80] *Id.* at 24-25
[81] *Id.* at 28-30.
[82] *Id.* at 33.
[83] *Id.* at 42.
[84] *Id.* at 42-43.
[85] *Id.* at 44.

decisions while on pre-trial release.[86] Counsel noted Mr. Maisonet's struggles with addiction and anxiety, his health problems, but also the unwavering support of his friends and family.[87] Counsel requested a sentence to the ten-year mandatory minimum.[88]

In response, the government accused Mr. Maisonet of lying ██████ ███████████████████████ The government again alleged Mr. Maisonet "persisted in his participation in … a significant drug trafficking operation" while on pre-trial release.[90] The government requested a sentence at the top of the guidelines (121 months) or above.[91]

Before imposing the sentence, the court noted that had the safety valve provision applied, Mr. Maisonet's guidelines range would have been significantly lower.[92] Which, when considering the district's history of sentencings, meant Mr. Maisonet would likely be facing a two-year sentence.[93] The government agreed this was a fair prediction,

---

[86] *Id.* at 44.
[87] *Id.* at 44-46.
[88] *Id.* at 46.
[89] *Id.* at 48.
[90] *Id.* at 48-49.
[91] *Id.* at 51.
[92] *Id.* at 52.
[93] *Id.* at 52.

but continued to advocate for a sentence at or above the 10-year mandatory minimum.[94]

The court imposed a sentence of ten years, on both counts, to run concurrently.[95] The sentence was, the court indicated, "sufficient but not greater than necessary to accomplish the purposes of sentencing."[96]

**(iii) Standard of Review**

When reviewing a district court's decision regarding a defendant's safety valve eligibility, this Court reviews factual determinations for clear error and the district court's legal interpretations of the statutes and guidelines *de novo. United States v. Milkintas,* 470 F.3d 1339, 1343 (11th Cir. 2006).

---

[94] *Id.* at 52-53.
[95] *Id.* at 56-57.
[96] *Id.* at 55.

## SUMMARY OF THE ARGUMENT

The district court erred by denying Mr. Maisonet application of the safety valve provision, USSG § 5C1.2. ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████ He submitted a full written statement, under oath, weeks before sentencing.

The court concluded, incorrectly, that because Mr. Maisonet originally omitted information about his continued criminal activity, he did not satisfy the criteria to receive safety valve relief. This, however, is in direct contradiction with this Court's binding precedent. *United States v. Brownlee,* 204 F.3d 1302 (11th Cir. 2000). "Nothing in the statute suggests that a defendant who previously lied *or withheld information* from the government is automatically disqualified from safety-valve relief." *Id.* at 1304 (emphasis added). Mr. Maisonet was eligible for, and should have received, a sentence in accordance with USSG § 5C1.2.

# ARGUMENT

Mr. Maisonet was entitled to be sentenced
pursuant to USSG § 5C1.2, the safety-valve
provision.

The safety-valve provision, USSG § 5C1.2, implements 18 U.S.C.

§ 3553(f), and permits the district court to impose a sentence below the

statutory mandatory minimum if a defendant meets five criteria. 18

U.S.C. § 3553(f)(1-5); USSG § 5C1.2(a)(1-5); *Brownlee,* 204 F.3d at 1304.

The Sentencing Guidelines also provide that a defendant convicted of a

drug offense who meets those criteria shall have his offense level

reduced by two levels. USSG § 2D1.1(b)(17).

At issue in this appeal is the fifth criterion, which provides in

relevant part:

> (5) not later than the time of the sentencing hearing, the
> defendant has truthfully provided to the Government all
> information and evidence the defendant has concerning the
> offense or offenses that were part of the same course of
> conduct or of a common scheme or plan, but the fact that the
> defendant has no relevant or useful other information to
> provide or that the Government is already aware of the
> information shall not preclude a determination by the court
> that the defendant has complied with this requirement.

USSG § 5C1.2(a)(5). This "tell all" provision requires a defendant to

come forward and truthfully tell all information he may reasonably

possess about the crimes in which he was involved, including

18

information relating to the involvement of others, and the chain of narcotics distribution. *See United States v. Yate,* 176 F.3d 1309, 1310 (11th Cir. 1999); *United States v. Cruz,* 106 F.3d 1553, 1557 (11th Cir. 1997). This information must be disclosed to the government prior to sentencing. *Brownlee,* 204 F.3d at 1304 (the only deadline for compliance with the statute and the guideline is "not later than the time of the sentencing hearing").

In *Brownlee*, the defendant gave a proffer upon his initial arrest. *Id.* at 1303. He admitted to his involvement with an illegal narcotics ring, but did not disclose who his supplier was. *Id.* One year later, the day before sentencing, the defendant offered to meet with the government to disclose more information. *Id.* On the morning of sentencing, Brownlee revealed that his supplier was his own co-defendant, a fact he had omitted in previous proffers. *Id.* at 1304. At sentencing the court did not apply the safety valve provision.

Brownlee appealed the court's denial of safety valve relief and this Court reversed. *Id.* at 1304-05. In doing so, the Court rejected the government's claim that § 5C1.2(5) requires a defendant to "disclose all information in good faith," and that lying in previous proffer "does not

constitute good faith." *Id.* at 1304. "Nothing in the statute suggests that a defendant who previously lied or withheld information from the government is automatically disqualified from safety-valve relief." *Id.* at 1304. As this Court noted, "lies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer no later than the commencement of sentencing." *Id.* at 1305.

Mr. Maisonet's case is materially indistinguishable from *Brownlee*. It is undisputed that Mr. Maisonet voluntarily met with the government and provided law enforcement with valuable information regarding illegal narcotics trafficking. He did not admit, during his in-person proffers, that he intended to receive another shipment of cocaine from another address located in Wakulla County, Florida, in October or November. Of course, there was no evidence that at the time of the proffers he intended to do so. In November of 2021 he was discovered to be associated with drugs at that address. Prior to sentencing, Mr. Maisonet submitted a sworn statement admitting to his involvement with the Wakulla County address.

Just as the defendant in *Brownlee* did not initially reveal the identity of his supplier, Mr. Maisonet did not share the details regarding the Wakulla County shipments. But also, just as in *Brownlee,*

███████████████████████████████████████████████

████████████████████████████████. The district court was incorrect when it concluded a defendant's prior omission or lie during a proffer, (coupled with a subsequent pre-sentencing admission of that lie or admission), precludes a defendant from receiving safety valve relief. *Brownlee,* 204 F.3d at 1304. Mr. Maisonet was in fact eligible for safety valve relief.

## CONCLUSION

Mr. Maisonet respectfully requests the Court vacate his sentence and remand for the district court to apply USSG § 5C1.2 at resentencing.

Respectfully submitted,

JOSEPH F. DEBELDER
Federal Public Defender

*Megan Saillant*

MEGAN SAILLANT
Assistant Federal Public Defender
Florida Bar No. 0042092
101 SE 2nd Place, Suite 112
Gainesville, Florida 32601
Telephone: (352) 373-5823
Email: Megan_Saillant@fd.org
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,980 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in Century Schoolbook, 14 point.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and to Assistant United States Attorney Robert Davies; and by U.S. Mail to Rodolfo Maisonet, Reg. No. 54265-509, FPC Pensacola, Federal Prison Camp, P.O. Box 3949, Pensacola, FL, 32516, on this 14th day of December 2022.

*Megan Saillant*

_____
MEGAN SAILLANT
Attorney for Appellant