[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-13124

_____

UNITED STATES OF AMERICA,

                                      Plaintiff-Appellee,

versus

RODOLFO MAISONET,

                                      Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00035-MW-MAF-1

_____

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about the process for assessing whether a defendant should receive a mandatory minimum sentence for a drug crime. A drug-crime defendant may be eligible to be sentenced without regard to the mandatory minimum if he meets the requirements for the safety valve. One of those requirements is the "tell-all" provision: a defendant must establish that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f). A defendant may satisfy this provision even if "the defendant has no relevant or useful other information to provide or . . . the Government is already aware of the information." *Id*. When a defendant establishes his eligibility for the safety valve, a district court must sentence him by weighing the statutory factors—seriousness of the offense, need for deterrence, and the like. *See* 18 U.S.C. § 3553(a). The weight of these factors may justify a sentence less than the mandatory minimum that would otherwise be imposed.

Rodolfo Maisonet was arrested for a crime subject to a mandatory minimum—conspiring to distribute cocaine. He proffered with the government, but he continued committing drug offenses that were part of the same common scheme until he was caught again. Then, shortly before sentencing, he signed an affidavit that

purported to provide additional information about the drug distribution conspiracy. The district court held that Maisonet's lies and continuing criminal activity made him ineligible for the safety valve as a matter of law. It also indicated that his affidavit continued not to provide all information about the scheme. Accordingly, the district court imposed the mandatory minimum sentence.

Maisonet argues that he should have been sentenced under the safety valve, but we disagree. The district court was wrong that Maisonet's lies and continuing criminal activity made him ineligible as a matter of law. Under the plain text of the statute, a defendant's cooperation need not be disregarded because it was prompted by a government investigation or because it was not provided all at one time. Nonetheless, we believe the district court made a separate factual determination that is unaffected by its legal error—that Maisonet's proffer and affidavit did not disclose everything about his drug distribution offense. Because this factual determination is firmly grounded in the record, we cannot say it was clearly erroneous, and we affirm.

**I.**

In August 2020, law enforcement intercepted a package in the mail containing nearly half a kilogram of cocaine. A couple of days later, Maisonet called the post office to ask about the package and when he would be able to retrieve it before driving with his nephew to pick it up. After Maisonet identified the package as his and took possession of it, two agents identified themselves as law enforcement, read him his *Miranda* rights, and asked him about the

shipment. Maisonet reiterated that the package was his and shared details about it. Specifically, he told the agents that he expected the package to contain about half a kilogram of cocaine, that it was shipped at his request from Puerto Rico, and that he received somewhere between ten and twelve packages shipped under similar circumstances since November of the previous year. Based on this information, Maisonet was charged with conspiring to distribute and possess five kilograms or more of cocaine and possession with the intent to distribute cocaine.

On October 22, 2021, Maisonet pleaded guilty to both charges. As part of his plea, Maisonet agreed to fully cooperate with law enforcement, and in exchange the government would file a substantial-assistance motion if it determined that Maisonet had been helpful. While cooperating with the government, Maisonet shared details about the logistics and participants in the drug distribution scheme, which the government independently verified and used to indict another suspect.

Then on November 30, just weeks after Maisonet pleaded guilty, he was arrested again. That day, federal agents conducting a separate investigation intercepted another package shipped from Puerto Rico containing about half a kilogram of cocaine. The government allowed the package to be delivered to its intended destination at a residence in Crawfordville, Florida while they surveilled the scene to see who would retrieve it. A woman recovered the package, and when confronted by law enforcement she revealed that several packages had been delivered to the address over the

previous months. Delivery records show that there were ten similar deliveries from August 2020 through November 2021, including one just the week before. While the woman did not know what these packages contained, she said her husband, J.A., knew of the packages and that a man named Rodolfo Maisonet would pick them up shortly after they were delivered. Additional witnesses later corroborated this account. Officers then removed the woman from the scene and waited to see if Maisonet would come to recover the delivery.

Shortly thereafter, Maisonet arrived. As he approached the driveway, he noticed the officers and drove away. The officers then pursued and caught up with the car about a mile away where they arrested him. Although the government did not charge Maisonet with any additional offenses, he admitted to his involvement in transporting two additional shipments of cocaine and acknowledged that these shipments were part of the same scheme as his original offense. Needless to say, Maisonet had not revealed any of this information to law enforcement before he was caught.

At sentencing, Maisonet updated his proffer by attaching a new statement to his sentencing memorandum. Although this statement was written in Spanish, he submitted an English translation after sentencing. In this statement, he admitted that he arranged for the shipment of two packages of cocaine from Puerto Rico and revealed the name of his supplier. Otherwise, he specifically denied involvement in any other shipments and insisted that this statement described the extent of his involvement. Notably,

Maisonet did not acknowledge the additional Crawfordville shipments that law enforcement discovered and that witnesses claim he retrieved, nor did he reveal any additional information he would presumably know like J.A.'s role in the scheme, the names of previous cocaine buyers, or any details about the Crawfordville residence and deliveries.

At sentencing, the court determined that Maisonet did not qualify for safety valve relief because he had not provided all the information he knew about the crime to the government.

The court spent most of its analysis on a "legal issue." In reading the statute, the court drew a distinction between whether a defendant "truthfully provide[s]" information and whether he "answer[s] a question honestly when confronted." According to the court, the safety valve provision requires the former because "provide" implies action rather than mere truthfulness. "[A]cknowledging under oath you were caught doesn't fix the problem of the original material omission." The court believed a contrary reading "would completely turn [the] safety valve on its head" because then a defendant could "lie to the government with impunity, give them some facts but not others," and so long as he admits it, the safety valve still applies. Such a ruling would be "perverse" and contrary to "the whole point of the rule[.]"

The district court also discussed whether Maisonet had in fact disclosed all of the relevant information about his crimes before sentencing. According to the court, Maisonet's updated statement "still [didn't] account for all of the historic data that relates to

22-13124               Opinion of the Court                         7

information about historic transactions." Specifically, the court observed that Maisonet's updated statement did not include information about "any other historical drugs that were sent to that same address," "[the] quantity of any other drugs," "historical data about the scope and nature of the conspiracy," or any information regarding the duration, frequency, and contents of any shipments.

After it determined that Maisonet was not eligible for safety valve relief, the court imposed the mandatory minimum 120-month sentence.

Maisonet appeals his sentence.

## II.

We review a district court's factual findings about safety valve relief for clear error and legal interpretations of the relevant statute *de novo*. *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004).

## III.

The safety valve provision allows district courts to sentence defendants convicted of certain drug offenses "without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). "The intent, clear from the face of the Act, is to provide a 'safety valve' so that less culpable offenders are not subject to mandatory minimums." *United States v. McFarlane*, 81 F.3d 1013, 1014 (11th Cir. 1996). A defendant qualifies for safety valve relief when five requirements are met, only one of which—the tell-all provision—is relevant here. At any point "not later than the time of the sentencing hearing," a

defendant must "truthfully provide[] to the Government all information and evidence the defendant has" related to "the same course of conduct or of a common scheme or plan" for which he was charged. 18 U.S.C. § 3553(f)(5). Notably, "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information" does not preclude a defendant from satisfying the tell-all provision. *Id*. A district court may, but is not required to, delay a sentencing hearing to allow a defendant an opportunity to debrief with the government. *See United States v. Garcia*, 405 F.3d 1260, 1274–75 (11th Cir. 2005).

When determining whether a defendant should be sentenced under the safety valve, a sentencing court must make three assessments. First, it must determine the facts—as relevant here, a court should ask what information the defendant provided the government and when it was provided. Second, a court must determine whether the facts it has found satisfy the statute's legal requirements—as relevant here, whether the defendant's statements to the government were complete and timely. And, third, a court must determine whether an eligible defendant should be sentenced below the mandatory minimum in the light of the sentencing factors and the unique circumstances of his case. *See United States v. Miles,* 75 F.4th 1213, 1224 (11th Cir. 2023) ("district courts may use their discretion to impose sentences that reflect the true facts of an offender's criminal history and personal circumstances, even if they are unaccounted for in the mandatory minimums that would otherwise apply").

Maisonet argues that the district court erred when it determined as a matter of law that he was not eligible for the safety valve because he continued his criminal conduct. The government argues that the district court's legal conclusion was correct. But the government also contends that the district court made an alternative finding that, even if Maisonet were not disqualified as a matter of law by his continuing criminal conduct, he did not as a factual matter provide complete information to the government. Maisonet insists that the court did not make a separate finding but that, even if the court did make such a finding, it was infected by the court's legal error.

We will address each argument in turn.

### A.

We will start with the district court's legal ruling. At sentencing, the court recognized that the underlying facts were not in dispute, and the "one issue" remaining was that it needed to "resolve the legal issue, which is, if you acknowledge those facts prior to sentencing, is that enough to satisfy [the tell-all provision]?" Ultimately the court concluded that, if the defendant acknowledges relevant information only after the government confronts him, then that acknowledgment does not satisfy the tell-all provision. In other words, the court concluded as a matter of law that "you don't remedy the material omission by simply reducing it to a sworn statement after the fact." We disagree.

The tell-all provision is not coextensive with acceptance of responsibility or substantial assistance. *See, e.g.*, *United States v.*

*Conde*, 178 F.3d 616, 622 (2d Cir. 1999) (distinguishing safety valve from acceptance of responsibility under the guidelines). The statute does not condition a defendant's eligibility for the safety valve on whether he has been caught in a lie or whether he has continued his criminal activity. The statute merely requires that the defendant provide all the information he has "not later than the time of the sentencing hearing." 18 U.S.C. § 3553(f)(5). Nor is there any requirement that a defendant provide all his information before the government finds out on its own or while the information is still useful. To the contrary, the statute specifies that a defendant may satisfy the tell-all requirement even if "the defendant has no relevant or useful other information to provide or that the Government is already aware of the information." *Id.*

The government argues that the word "provide" supports the district court's legal conclusion. Under the government's theory, "provide" is active and requires initiative from the defendant that is undermined if the government must confront the defendant about his lies or crimes. We disagree. True, the defendant has an affirmative duty to come forward and prove his information. *See United States v. Cruz,* 106 F.3d 1553, 1557 (11th Cir. 1997) ("The burden is on the defendant to come forward and to supply truthfully to the government all the information that he possesses."); *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004) ("The burden is on the defendant to show that he has met all of the safety valve factors."). But neither the statute nor the ordinary meaning of "provide" suggests that cooperation may not be prompted by a government investigation. *See* 18 U.S.C. § 3553(f); *Provide*, THE AMERICAN

22-13124               Opinion of the Court                    11

HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) ("to make available (something needed or desired); furnish"). Instead, the statute expressly contemplates that the government may already be aware of the information that the defendant recounts. Under the statute, so long as a full debriefing occurs by the time of sentencing, the defendant may qualify for relief.

We held as much in *United States v. Brownlee*, 204 F.3d 1302 (11th Cir. 2000). In that case, Elliott Brownlee was arrested on various drug charges, and upon his arrest he gave a proffer to the government in which he "admitted to his involvement in the sale of cocaine, but he did not truthfully disclose the source of the cocaine." *Id.* at 1303. Despite this deception, Brownlee asked to meet with the prosecutor on the morning of sentencing and identified his co-defendant as the source. *Id.* at 1303–04. We concluded that he was eligible for the safety valve. We declined to adopt a good-faith requirement for the tell-all provision and instead held that "lies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing." *Id.* at 1305. *See also United States v. Schreiber,* 191 F.3d 103, 108–09 (2d Cir. 1999); *United States v. Tournier,* 171 F.3d 645, 647 (8th Cir. 1999).

The government says *Brownlee* is distinguishable from the present case because, unlike *Brownlee*, Maisonet came clean, if at all, only after the government confronted him about his new criminal conduct. We disagree. *Brownlee* stands for the proposition that,

whatever a defendant may have done in the lead up to sentencing, a defendant is not disqualified from safety valve relief as a matter of law under the tell-all provision so long as he comes clean before the start of sentencing. The same principle applies here just as much as it applied in *Brownlee*.

The government also argues that allowing a defendant like Maisonet to be eligible for the safety valve would lead to unjust or incongruous results. Likewise, in the district court's view, allowing defendants to qualify for safety valve relief in this context would be "perverse" because it would allow them to "gam[e] the system" by misleading the government and then coming clean only when caught.

These considerations are misplaced for two reasons.

First, we need not consider policy arguments like this one when a statute is clear. "[I]f the text of a statute is unambiguous, it should be applied by its terms without regard to policy arguments, legislative history, or any other matter extraneous to the text—unless this application leads to an absurdity." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 436 (2012). Here, as a matter of straightforward statutory text, the deadline for disclosure is "not later than the time of the sentencing hearing" and it doesn't matter that "the Government is already aware of the information." 18 U.S.C. § 3553(f)(5). There is no requirement that the defendant refrain from criminal activity or disclose without prompting by the government's investigation.

Second, even though a defendant is not legally precluded from safety valve relief by his continuing criminal conduct or a reluctant disclosure, those attributes may still be factored into his ultimate sentence. As we recognized in *Brownlee*, a defendant's prior attempt to mislead the government—or, here, to continue his criminal activity—is relevant to whether the defendant's later proffer should be believed. *See Brownlee*, 204 F.3d at 1305. Likewise, a court can consider a defendant's post-offense conduct in assessing the actual sentence that a defendant receives. *See* 18 U.S.C. § 3553(a)(1)–(2); *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007). After all, "safety valve eligibility does not guarantee [a defendant] a below-statutory minimum sentence; it just gives the court the opportunity to sentence below the minimum if it believes it is appropriate." *United States v. Owens*, 38 F.4th 1, 3 (8th Cir. 2022). "[A] court compelled to disregard a mandatory minimum sentence in favor of the guidelines range" by the safety valve "may vary upward to and even past the mandatory minimum point after considering the § 3553(a) factors—so long as the final sentence is reasonable." *United States v. Quirante*, 486 F.3d 1273, 1275–76 (11th Cir. 2007).

### B.

We now address whether we may affirm on another rationale. Throughout the district court's oral ruling on the defendant's request for safety valve relief, it suggested that the defendant's final attempt to debrief—a Spanish language affidavit he filed with his sentencing memorandum—had not fully and truthfully

disclosed all the facts of his crimes. Specifically, the district court noted that the statement did not include information about "any other historical drugs that were sent to that same [Crawfordville] address," "[the] quantity of any other drugs," "historical data about the scope and nature of the conspiracy," or information regarding the duration, frequency, and contents of any shipments. Ultimately, the district court said: "I find . . . that [Maisonet's] statement doesn't fix [his previous omission], because it still doesn't account for all of the historic data that relates to information about historic transactions."

The government argues that we should affirm based on this alternative holding. Maisonet makes three arguments in response, but none is persuasive.

First, Maisonet argues that the district court did not make an alternative finding at all because the court—at one point—said this finding was "not determinative" of its final decision. We disagree with Maisonet's reading of the record. The district court described this issue as both "an argument in the alternative" and a "secondary basis" by which it could deny safety valve relief. It said that its fact-finding was "not determinative" because it had already concluded—albeit erroneously—that Maisonet could not benefit from the safety valve as a matter of law. By definition, an alternative holding isn't "determinative" because it is only one of several reasons that independently compel the same outcome. Nonetheless, "the sort of reasoning employed [here]—that a particular test doesn't apply but that, even if it does, it isn't satisfied—constitutes

22-13124               Opinion of the Court                        15

a prototypical alternative holding." *United States v. Files*, 63 F.4th 920, 926 (11th Cir. 2023).

Second, Maisonet says that this fact-specific determination was affected by the district court's legal error. Again, we disagree. The district court's first and primary rationale for rejecting Maisonet's argument for safety valve eligibility was its conclusion that he was statutorily ineligible because of his continuing criminal conduct. But this secondary fact-specific rationale is independent of the first rationale: the district court explained that, even if its first holding was wrong, it would still deny safety valve relief because it did not believe Maisonet's statement was complete.

To be sure, the district court's first and second reasons are related in that the district court may well have considered Maisonet's lies and continuing criminal conduct in evaluating the truthfulness of his affidavit. But that doesn't mean the district court's legal conclusion affected its factfinding. Although Maisonet's conduct did not disqualify him as a matter of law, his acts are a "part of the total mix of evidence for the district court to consider in evaluating the completeness and truthfulness of the defendant's proffer." *Brownlee*, 204 F.3d at 1305 (quoting *Schreiber*, 191 F.3d at 108); *see United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (factfinder may consider "that [the witness] has consistently lied in the past, engaged in various criminal activities, [and] thought that his testimony would benefit him" in assessing credibility (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985) (alteration in original))). A district court may consider facts

like these when determining whether, as a factual matter, a defendant has truthfully provided all relevant information.

Third, Maisonet argues that the district court was wrong—that his statement reflects the entirety of his involvement, and he had nothing more to add. But we cannot say the district court clearly erred in finding otherwise. The burden is on Maisonet to prove he satisfied the provision, and the district court had reason to doubt him. As the district court explained, Maisonet limited his disclosure to his own conduct and did not discuss the entire scope of the conspiracy to mail drugs from Puerto Rico to Florida. The government further notes that Maisonet did not share J.A.'s role in the scheme or the names of previous cocaine buyers. These omissions are particularly noteworthy because the government discovered postal records of additional drug shipments to J.A.'s Crawfordville residence that Maisonet had not acknowledged and that witnesses saw him retrieve.

We think the district court reasonably found that Maisonet's updated statement lacks material information that he would be expected to provide to establish his eligibility for safety valve relief. To satisfy this factor, Maisonet needed "to supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). In particular, we have previously affirmed the denial of safety valve relief when a defendant refuses to "give law enforcement officers any

information about the intended distribution of his" drugs. *United States v. Johnson*, 375 F.3d 1300, 1303 (11th Cir. 2004). *See also United States v. Myers*, 106 F.3d 936, 941 (10th Cir. 1997) (defendant did not satisfy the tell-all provision because he refused to disclose "who his buyers were or the names of others connected to his operation."). We cannot say the district court clearly erred in finding that Maisonet did not fully disclose all the information that he knew.

## IV.

The district court is **AFFIRMED.**

22-13124               NEWSOM, J., Concurring                    1

NEWSOM, Circuit Judge, concurring:

     I concur in the Court's judgment and join its opinion, with the exception of Part III.A. I don't disagree with anything in Part III.A, but to my mind its legal analysis of the "tell all" provision, though cogent and persuasive, isn't necessary to resolve the appeal. It's sufficient to hold, as Part III.B correctly does, that the district court didn't clearly err in finding, as a matter of fact, that Maisonet failed to "tell all," and thereby disqualified himself from safety-valve relief. My preference—at least in opinions that embody the Court's judgment—is to say no more than is essential, so I would leave it at that. *Cf. United States v. Files*, 63 F.4th 920, 933 (11th Cir. 2023) (Newsom, J., concurring).